Christopher S. Alvarez (SBN 294795)
E-Mail: calvarez@fisherphillips.com
Justina Yassa (SBN 345615)
E-Mail: jyassa@fisherphillips.com
FISHER & PHILLIPS LLP
621 Capitol Mall, Suite 2400
Sacramento, California 95814
Telephone: (916) 210-0400
Facsimile: (916) 210-0401

Attorneys for Defendant
CHAINALYSIS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ELI HICKOX, an individual,

Plaintiff,

v.

CHAINALYSIS, INC., a Delaware corporation; and Does 1-20, inclusive,

Defendant.

CASE NO.: 3:26-cv-06217-WHO

*[Removed from San Francisco Superior Court Case No. CGC-26-635315]*

**JOINT STIPULATION TO SUBMIT MATTER TO ARBITRATION; ~~[PROPOSED]~~ ORDER**

Complaint Filed: March 27, 2026
FAC Filed: April 20, 2026
Trial Date: Not Set

Plaintiff ELI HICKOX ("Plaintiff") and Defendant CHAINALYSIS, INC. ("Defendant") (collectively "the Parties"), by and through their respective counsel of record, hereby enter into this Joint Stipulation to Submit Matter to Arbitration ("Stipulation"):

WHEREAS, on or about March 27, 2026, Plaintiff filed a Complaint in the above-entitled action in San Francisco County Superior Court, Case No. CGC-26-635315 (the "Action");

WHEREAS, on or about April 20, 2026, Plaintiff filed a First Amended Complaint;

WHEREAS, on or about June 22, 2026, Defendant removed the Action to the United States District Court for the Northern District of California, 3:26-cv-06217-WHO;

WHEREAS, Plaintiff executed a valid and enforceable arbitration agreement which is governed by the laws of the State of New York;

WHEREAS, Plaintiff worked and lived in California at all relevant times;

WHEREAS, California *Labor Code* § 925(a)(1) prohibits an employer from requiring a California employee, as a condition of employment to "require the employee to adjudicate outside of California a claim arising in California."

WHEREAS, given that Plaintiff is presumptively an employee under California law, *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) applies to the Parties' Arbitration Agreement. *Armendariz* requires that mandatory employment arbitration agreements provide for, at a minimum: (1) neutral arbitrators, (2) more than minimal discovery, (3) a written award, (4) all types of relief that would otherwise be available in court, and (5) no additional costs for the employee beyond what he or she would incur if the employee were bringing a claim in court. *Armendariz*, 24 Cal.4th at 110-111.

WHEREAS, the Parties agree to arbitrate Plaintiff's claims pursuant to California law given Plaintiff's executed arbitration agreement;

WHEREAS, on June 26, 2026, the Action was assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program;

WHEREAS, the Parties have tentatively agreed to participate in mediation as the ADR process prior to arbitration;

WHEREAS, the Parties continue to be engaged in settlement negotiations;

WHEREAS, General Order No. 71 requires the Parties to exchange initial disclosures;

WHEREAS, the Parties agree that Defendant's compliance with the Court's mandatory procedural requirements, such as exchanging initial disclosures pursuant to General Order No. 71, does not demonstrate that Defendant has engaged in the litigation of the merits of this Action, nor does it waive Defendant's right to arbitration; and

IT IS FURTHER STIPULATED AND AGREED, by and between the Parties hereto, through their counsel of record, as follows:

1. The Parties agree to submit Plaintiff's claims to private arbitration.

2. Any arbitration for this matter shall be conducted pursuant to California law in accordance with California *Labor Code* § 925, California *Code of Civil Procedure* § 1280 *et seq*., 9 U.S.C. § 3, and *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000).

3. The Court will strike the following bolded language in Section 5(a) of the Arbitration Agreement attached hereto as Exhibit A:

> Shall be subject to binding arbitration **under the arbitration provisions set forth in the New York Civil Practice Law and Rules, Article 75, Section 7501 through 7514 (the "Rules") and pursuant to New York Law.**

4. The Court will also strike the following bolded language in Section 5(b) of the Arbitration Agreement attached hereto as Exhibit A:

> I agree that the arbitrator shall administer and conduct any arbitration **in accordance with New York law, including the rules, and that the arbitrator shall apply substantiative and procedural New York law to any dispute or claim, without reference to the rules of conflict of law. To the extent that the JAMS Rules conflict with New York law, New York law shall take precedence.**

5. Further, the Court will strike the following language in its entirety in Section 5(b) of the Arbitration Agreement attached hereto as Exhibit A:

> **I understand that the parties to the arbitration shall each pay an equal share of the costs and expenses of such arbitration, except as prohibited by law, and understand that each party shall separately pay for its respective attorneys' fees and costs.**

6. Lastly, that the Court will strike the following language in its entirety in Section 5(b) of the Arbitration Agreement attached hereto as Exhibit A:

> **I agree that arbitration under this agreement shall be conducted in New York County, New York.**

///

7. This Court shall retain jurisdiction pursuant to 9 U.S.C. § 3, California *Code of Civil Procedure* §1281.4, and California *Code of Civil Procedure* §§ 1285 through 1288.8, to enforce this Stipulation to submit this matter to binding arbitration and to confirm, correct, or vacate the arbitration award rendered therein.

8. Consistent with *Armendariz v. Foundational Health Psychcare Servs., Inc.*, 24 Cal.4th 83 (2000), Defendant shall bear the costs of the arbitrator, forum, and filing fees with the exception of Plaintiff/Claimant's initial filing fee; In entering into this Stipulation, no party waives its right, to the extent permitted under California law, to appeal or challenge any arbitration decision, order, or award.

9. Prior to commencing private arbitration, the Parties agree to participate in mediation through the Court's ADR Multi-Option Program and that participating in such mediation does not constitute waiver of Defendant's right to enforce arbitration.

10. The Parties agree that compliance with this Court's requirement to exchange initial disclosures does not constitute waiver of Defendant's right to enforce arbitration.

11. The Parties agree that all formal discovery in the Action will be stayed until discovery pursuant to the binding arbitration commences.

12. The Parties agree that this Stipulation may be executed in one or more counterparts, including via facsimile or email, each of which shall be deemed an original and all of which shall constitute one and the same Stipulation.

Dated: September 8, 2026

FISHER & PHILLIPS LLP

By: */s/ Justina Yassa*
Christopher S. Alvarez
Justina Yassa

Attorneys for Defendant
CHAINALYSIS, INC.

///

///

///

Dated: September 8, 2026

LAW OFFICES OF JEREMY PASTERNAK

By: /s/ *Margaret P. Crowley [as authorized on 9/8/2026]*
Jeremy Pasternak
Margaret P. Crowley

Attorneys for Plaintiff
ELI HICKOX

# EXHIBIT A

EXHIBIT A

**EXHIBIT A**

**CONFIDENTIAL INFORMATION, AT-WILL EMPLOYMENT, ARBITRATION AND INVENTION ASSIGNMENT AGREEMENT**
*(See Attached)*

**CONFIDENTIAL INFORMATION, AT-WILL EMPLOYMENT, ARBITRATION AND INVENTION ASSIGNMENT AGREEMENT**

This agreement (the "Agreement") between Chainalysis Inc., a Delaware corporation and its subsidiaries, affiliates, successors or assigns (together, the "Company"), and the individual identified on the signature page to this Agreement ("Employee" or "I") is effective as of September 19, 2022, the first day of my employment by the Company. I acknowledge that this Agreement is a material part of the consideration for my employment and continued employment by the Company. In exchange for the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**I. Confidentiality.**

a. *Definition of Confidential Information.* "Company Confidential Information" means information (including any and all combinations of individual items of information) that the Company has or will develop, acquire, create, compile, discover or own, that has value in or to the Company's business which is not generally known and which the Company wishes to maintain as confidential. Company Confidential Information includes both information disclosed by the Company to me, and information developed or learned by me during the course ofmy employment with the Company. Company Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of the Company, whether or not such information is identified as Company Confidential Information. By example, and without limitation, Company Confidential Information includes any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Company, or to the Company's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, or other information regarding the Company's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), software, developments, inventions, discoveries, ideas, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information disclosed by the Company either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company property. Notwithstanding the foregoing, Company Confidential Information shall not include any such information which I can establish (i) was publicly known or made generally available prior to the time of disclosure by the Company to me; (ii) becomes publicly known or made generally available after disclosure by the Company to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by the Company as shown by my then-contemporaneous written records; provided that any combination of individual items of information shall not be deemed to be within any of the foregoing exceptions merely because one or more of the individual items are within such exception, unless the combination as a whole is within such exception. I understand that nothing in this Agreement is intended to limit employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law.

b. *Nonuse and Nondisclosure.* I agree that during and after my employment with the Company, I will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information, and I will not (i) use Company Confidential Information for any purpose

whatsoever other than for the benefit of the Company in the course of my employment, or (ii) disclose Company Confidential Information to any third party without the prior written authorization of the Company. If I am compelled to disclose Company Confidential Information by subpoena or other legal process, prior to any such disclosure, I shall provide written notice to the Company and cooperate with the Company in obtaining a protective order or other efforts to limit the disclosure of Company Confidential Information. I agree that I obtain no right, title or interest to any Company Confidential Information, and that as between the Company and myself, the Company retains all right title and interest to Company Confidential Information. I further understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that my obligations under this Agreement shall continue after termination of my employment. Pursuant to the Defend Trade Secrets Act of 2016, I acknowledge that I shall not have criminal or civil liability under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney and solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if I file a lawsuit for retaliation by the Company for reporting a suspected violation of law, I may disclose the trade secret to my attorney and may use the trade secret information in the court proceeding, if I (X) file any document containing the trade secret under seal and (Y) do not disclose the trade secret, except pursuant to court order.

c. *Former Employer Confidential Information.* I agree that during my employment with the Company, I will not improperly use, disclose, or induce the Company to use any proprietary information or trade secrets of any former employer or other person or entity which I have an obligation to keep in confidence. I further agree that I will not bring onto the Company's premises or transfer onto the Company's technology systems any unpublished document, proprietary information, or trade secrets belonging to any such third party unless disclosure to, and use by, the Company has been consented to in writing by such third party.

d. *Third Party Information.* I recognize that the Company has received and in the future will receive from third parties associated with the Company, *e.g.,* the Company's past, present or prospective customers, vendors suppliers, licensors, licensees, business partners, or collaborators ("Associated Third Parties"), their confidential or proprietary information ("Associated Third Party Confidential Information") subject to a duty on the Company's part to maintain the confidentiality of such Associated Third Party Confidential Information and to use it only for certain limited purposes. By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree that at all times during my employment with the Company and thereafter, I owe the Company and its Associated Third Parties a duty to hold all such Associated Third Party Confidential Information in the strictest confidence, and not to use it or to disclose it to any person, firm, corporation, or other third party except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I further agree to comply with any and all Company policies and guidelines that may be adopted from time to time regarding Associated Third Parties and Associated Third Party Confidential Information. If I am compelled to disclose Associated Third Party Confidential Information by subpoena or other legal process, prior to any such disclosure, I shall provide written notice to the Company and cooperate with the Company and/or any Associated Third Party in obtaining a protective order other efforts to limit the disclosure of Associated Third Party Confidential Information. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information or violation of any Company policies during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company.

2. **Ownership.**

a. *Assignment of Inventions.* As between the Company and myself, I agree that all right, title, and interest in and to any and all copyrightable material, notes, records, ideas, drawings, designs, inventions, improvements, developments, discoveries and trade secrets conceived, discovered, authored, invented, developed or reduced to practice by me, solely or in collaboration with others, during the period of time I am in the employ of the Company (including during my off-duty hours), or with the use of the Company's equipment, supplies, facilities, or Company Confidential Information, and any copyrights, trademarks, patents, trade secrets, mask work rights or other intellectual property rights relating to the foregoing, except as provided in Section 2.g below (collectively, "Inventions"), are the sole property of the Company. I also agree to promptly make full written disclosure to the Company of any Inventions, and to deliver and assign and hereby irrevocably assign fully to the Company all of my right, title and interest in and to Inventions. I agree that this assignment includes a present conveyance to the Company of ownership of Inventions that are not yet in existence. I further acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any Inventions is within the Company's sole discretion and for the Company's sole benefit, and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

b. *Pre-Existing Materials.* I will inform the Company in writing before incorporating any inventions, discoveries, ideas, original works of authorship, developments, improvements, trade secrets and other proprietary information or inte11ectual property rights owned by me or in which I have an interest prior to, or separate from, my employment with the Company, including without limitation, any such inventions that meet the criteria set forth herein under Section 2.g ("Prior Inventions") into any Invention or otherwise utilizing any such Prior Invention in the course of my employment with the Company, and the Company is hereby granted a nonexclusive, royalty-free, perpetual, irrevocable, transferable worldwide license (with the right to grant and authorize sublicenses) to make, have made, use, import, offer for sale, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Prior Inventions, without restriction, including, without limitation, as part of or in connection with such Invention, and to practice any method related thereto. I will not incorporate any inventions, discoveries, ideas, original works of authorship, developments, improvements, trade secrets and other proprietary information or intellectual property rights owned by any third party into any Invention without the Company's prior written permission. I have attached hereto as Appendix A, a list describing all Prior Inventions or, if no such list is attached, I represent and warrant that there are no such Prior Inventions. Furthermore, I represent and warrant that if any Prior Inventions are included on Appendix A, they will not materially affect my ability to perform all obligations under this Agreement.

c. *Moral Rights.* Any assignment to the Company of Inventions includes all rights of attribution, paternity, integrity, modification, disclosure and withdrawal, and any other rights throughout the world that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively, "Moral Rights"). To the extent that Moral Rights cannot be assigned under applicable law, I hereby waive and agree not to enforce any and all Moral Rights, including, without limitation, any limitation on subsequent modification, to the extent permitted under applicable law.

d. *Maintenance of Records.* I agree to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company. As between the Company and myself, the records are and will, at all times, be available to and remain the sole property of the Company.

e. *Further Assurances.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments, and all other instruments that the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights, and in order to deliver, assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title, and interest in and to all Inventions, and testifying in a suit or other proceeding relating to such Inventions. I further agree that my obligations under this Section 2.e shall continue after the termination of this Agreement.

f. *Attorney-in-Fact.* I agree that, if the Company is unable because of my unavailability, mental or physical incapacity, or for any other reason to secure my signature with respect to any Inventions, including, without limitation, for the purpose of applying for or pursuing any application for any United States or foreign patents or mask work or copyright registrations covering the Inventions assigned to the Company in Section 2.a, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf to execute and file any papers and oaths, and to do all other lawfully permitted acts with respect to such Inventions to further the prosecution and issuance of patents, copyright and mask work registrations with the same legal force and effect as if executed by me. This power of attorney shall be deemed coupled with an interest, and shall be irrevocable.

g. *Exception to Assignments.* I understand that the provisions of this Agreement requiring assignment oflnventions to the Company do not apply to any Invention that I have developed entirely on my own time without using the Company's equipment, supplies, facilities, trade secret information or Company Confidential Information (an "Other Invention") except for those Other Inventions that either (i) relate at the time of conception or reduction to practice of such Other Invention to the Company's business, or actual or anticipated research or development of the Company or (ii) result from or relate to any work that I performed for the Company or to any Company Confidential Information or Inventions. I will not incorporate, or permit to be incorporated, any Other Invention owned by me or in which I have an interest into a Company product, process or service without the Company's prior written consent. Notwithstanding the foregoing sentence, if, in the course of my employment with the Company, I incorporate into a Company product, process, or service an Other Invention owned by me or in which I have an interest, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, transferable, sublicensable, worldwide license to reproduce, make derivative works of, distribute, perform, display, import, make, have made, modify, use, sell, offer to sell, and exploit in any other way such Other Invention, and to practice any method related thereto.

3. **Restricted Activities.** For the purposes of this Section 3, the term Company includes the Company and all other persons or entities that control, are controlled by or are under common control with the Company ("Affiliates").

a. *Definitions.* "Any Capacity" includes, without limitation, to (i) be an owner, founder, shareholder, partner, member, advisor, director, consultant, contractor, agent, employee, affiliate or co-venturer, (ii) otherwise invest, engage or participate in, (iii) be compensated by or (iv) prepare to be or do any of the foregoing or assist any third party to do so; provided, Any Capacity will not include being a holder of less than one percent (1%) of the outstanding equity of a public company. "Cause" means to recruit, employ, retain or otherwise solicit, induce or influence, or to attempt to do so. "Solicit" means to (1) service, take orders from or solicit the business or patronage of any Associated Third Party for myself or any other person or entity other than the Company, (2) divert, entice or otherwise take away from the Company the business or patronage of any Associated Third Party, or to attempt to do so, or (3) solicit, induce or encourage any Associated Third Party to terminate or reduce its relationship with the Company.

b. *Acknowledgments.*

i.I acknowledge and agree that (1) the Company's business is highly competitive, secrecy of the Company Confidential Information is of the utmost importance to the Company and I will learn and use Company Confidential Information in performing my work for the Company and (2) my position may require me to establish goodwill with Associated Third Parties and employees on behalf of the Company and such goodwill is extremely important to the Company's success and that Company has made substantial investments to develop its business interests and goodwill.

ii.I agree that the limitations as to time, geographical area and scope of activity to be restrained in this Section 3 are reasonable and are not greater than necessary to protect the goodwill or other business interests of Company. I further agree that such investments are worthy of protection and that Company's need for protection afforded by this Section 4 is greater than any hardship I may experience by complying with its terms.

iii.I acknowledge that my violation or attempted violation of the agreements in this Section 3 will cause irreparable damage to Company or its Affiliates, and I therefore agree that Company shall be entitled, as a matter of right, to an injunction from a court of competent jurisdiction, restraining any violation or further violation of this Section 3 by me or others acting on my behalf. Company's right to injunctive relief shall be cumulative and in addition to any other remedies provided by law or equity.

iv. Although I believe that the limitations as to time, geographical area and scope of activity contained herein are reasonable and do not impose a greater restraint than necessary to protect the goodwill or other business interests of Company, if it is judicially determined not to be the case, the limitations shall be reformed to the extent necessary to make them reasonable and not to impose a restraint that is greater than necessary to protect the goodwill or other business interests of Company. The Company and I agree that the provisions of this Section 3, as so amended, shall be valid and binding as though any invalid or unenforceable provision had not been included.

c. *As an Employee.* During my employment with the Company, I will not directly or indirectly: (i) Cause any person to leave their employment with the Company (other than terminating subordinate employees in the course of my duties for the Company); (ii) Solicit any Associated Third Party; (iii) act in Any Capacity in or with respect to any commercial activity which competes, or is reasonably likely to compete, with any business that the Company conducts, proposes to conduct or demonstrably anticipates conducting, at any time during my employment (a "Competing Business"); (iv) enter into in an employment, consulting or other similar relationship with another person or entity that requires a significant time commitment without the prior written consent of the Company; or (v) make, or cause to be made, any statements, observations, or opinions, or communicate any information (whether oral or written), that disparages or is likely in any way to harm the reputation of the Company, its customers, users and/or Associated Third Parties except that nothing contained in this Agreement shall be deemed to prohibit me from testifying truthfully under oath pursuant to any lawful court order or subpoena or otherwise responding to or providing disclosures required by law.

d. *After Termination.* For the period of twelve (12) months immediately following termination of my employment with the Company (for any or no reason, whether voluntary or involuntary), I will not directly or indirectly: (i) Cause any person to leave their employment with the Company; (ii) Solicit any Associated Third Party; or (iii) act in Any Capacity in or with respect to any Competing Business located within the State of New York, the rest of the United States, or anywhere else

in the world]; or (iv) make, or cause to be made, any statements, observations, or opinions, or communicate any information (whether oral or written), that disparages or is likely in any way to harm the reputation of the Company, its customers, users and/or Associated Third Parties except that nothing contained in this Agreement shall be deemed to prohibit me from testifying truthfully under oath pursuant to any lawful court order or subpoena or otherwise responding to or providing disclosures required by law. The foregoing time frames shall be increased by the period of time from the commencement of any violation of the foregoing provisions until such time as I have cured such violation.

4. **Employment At-Will.** I agree that this Agreement is not an employment contract for any particular term. I have the right to resign and the Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause. This Agreement does not purport to set forth all of the terms and conditions of my employment, and as an employee of the Company, I have obligations to the Company which are not described in this Agreement. However, the terms of this Agreement govern over any such terms that are inconsistent with this Agreement and supersede the terms of any similar form that I may have previously signed. This Agreement can only be changed by a subsequent written agreement signed by the Chief Executive Officer or President of the Company, or an authorized designee.

5. **Arbitration and Equitable Relief**

a. *Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY, IN THEIR CAPACITY AS SUCH OR OTHERWISE), ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION PROVISIONS SET FORTH IN THE NEW YORK CIVIL PRACTICE LAW AND RULES, ARTICLE 75, SECTION 7501 THROUGH 7514 (THE "RULES") AND PURSUANT TO NEW YORK LAW. THE FEDERAL ARBITRATION ACT SHALL CONTINUE TO APPLY WITH FULL FORCE AND EFFECT NOTWITHSTANDING THE APPLICATION OF PROCEDURAL RULES SET FORTH IN THE RULES. I AGREE THAT I MAY ONLY COMMENCE AN ACTION IN ARBITRATION, OR ASSERT COUNTERCLAIMS IN AN ARBITRATION, ON AN INDIVIDUAL BASIS AND, THUS, I HEREBY WAIVE MY RIGHT TO COMMENCE OR PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION(S) AGAINST THE COMPANY, AS PERMITTED BYLAW. DISPUTES THAT I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY WRY, INCLUDE ANY STATUTORY CLAIMS UNDER LOCAL, STATE, OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE CIVIL RIGHTS ACT OF 1991, THE AMERICANS WITH DISABILITIES ACT OF 1990, THEAGEDISCRIMINATIONINEMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE SARBANES-OXLEY ACT, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, THE FAIR CREDIT REPORTING ACT, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, THE FAMILY AND MEDICAL LEAVE ACT, THE NEW YORK STATE HUMAN RIGHTS LAW, THE NEW YORK CITY HUMAN RIGHTS LAW, IF APPLICABLE, THE NEW YORK LABOR CODE, THE NEW YORK WORKERS' COMPENSATION LAW, CLAIMS OF HARASSMENT, DISCRIMINATION AND WRONGFUL TERMINATION, AND ANY STATUTORY OR COMMON LAW CLAIMS. NOTWITHSTANDING THE FOREGOING, I UNDERSTAND THAT NOTHING IN THIS AGREEMENT CONSTITUTES A WAIYER OF MY RIGHTS UNDER SECTION 7 OF THE NATIONAL LABOR RELATIONS ACT. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

b. *Procedure.* I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY JUDICIAL ARBITRATION & MEDIATION SERVICES, INC. ("JAMS"), PURSUANT TO ITS

EMPLOYMENT ARBITRATION RULES & PROCEDURES (THE "JAMS RULES"). I UNDERSTAND THAT THE PARTIES TO THE ARBITRATION SHALL EACH PAY AN EQUAL SHARE OF THE COSTS AND EXPENSES OF SUCH ARBITRATION, EXCEPT AS PROHIBITED BY LAW, AND UNDERSTAND THAT EACH PARTY SHALL SEPARATELY PAY FOR ITS RESPECTIVE ATTORNEYS' FEES AND COSTS. I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION, MOTIONS TO DISMISS, AND MOTIONS FOR CLASS CERTIFICATION, PRIOR TO ANY ARBITRATION HEARING. I AGREE THAT THE ARBITRATOR SHALL ISSUE A WRITTEN DECISION ON THE MERITS. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES AVAILABLE UNDER APPLICABLE LAW. I AGREE THAT THE DECREE OR AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED AS A FINAL AND BINDING JUDGMENT IN ANY COURT HAVING JURISDICTION THEREOF. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN ACCORDANCE WITH NEW YORK LAW, INCLUDING THE RULES, AND THAT THE ARBITRATOR SHALL APPLY SUBSTANTIVE AND PROCEDURAL NEW YORK LAW TO ANY DISPUTE OR CLAIM, WITHOUT REFERENCE TO RULES OF CONFLICT OF LAW. TO THE EXTENT THAT THE JAMS RULES CONFLICT WITH NEW YORK LAW, NEW YORK LAW SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING. I AGREE THAT ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED IN NEW YORK COUNTY, NEW YORK.

c. *Remedy.* EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, ARBJTRA TION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

d. *Availability oflnjunctive Relief* I AGREE THAT ANY PARTY MAY ALSO PETITION THE COURT FOR INJUNCTIVE RELIEF WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF THE AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, ARBITRATION AND INVENTION ASSIGNMENT AGREEMENT BETWEEN ME AND THE COMPANY OR ANY OTHER AGREEMENT REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NONCOMPETITION OR NONSOLICITATION. I UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF SUCH AN AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION WITHOUT POSTING OF A BOND. IN THE EVENT EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS' FEES.

e. *Administrative Relief* I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE, OR FEDERAL ADMINISTRATIVE BODY OR GOVERNMENT AGENCY THAT IS AUTHORIZED TO ENFORCE OR ADMINISTER LAWS RELATED TO EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, THE NEW YORK STATE DIVISION OF HUMAN RIGHTS, THE NEW YORK CITY COMMISSION ON HUMAN RIGHTS (AS APPLICABLE), THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, THE NATIONAL LABOR RELATIONS BOARD, OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM, EXCEPT AS PERMITTED BYLAW.

f. *Voluntary Nature of Agreement.* I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES, AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT I AM WAIVING MY RIGHT TO A JURY TRIAL.FINALLY,

I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

6. **Survival.** I agree that any change or changes in my employment title, duties, compensation or equity interest after the signing of this Agreement shall not affect the validity or scope of this Agreement. I agree that my obligations under Sections 1, 2, 3, 5 and 8 of this Agreement shall continue in effect after termination of my employment, regardless of the reason, and whether such termination is voluntary or involuntary, and that the Company is entitled to communicate my obligations under this Agreement to any of my potential or future employers. I will provide a copy of this Agreement to any potential or future employers of mine, so that they are aware of my obligations hereunder. My obligations under Sections 1, 2 and 3 also shall be binding upon my heirs, executors, assigns and administrators, and shall inure to the benefit of the Company, its Affiliates, successors and assigns. This Agreement may be freely assigned by the Company to any third party.

7. **No Conflicts.**

a. *Current Obligations.* I agree that while I am employed by the Company, I will not engage in or undertake any other employment, occupation, consulting relationship, or commitment that is directly related to the business in which the Company is now involved or becomes involved or has plans to become involved, nor will I engage in any other activities that conflict with my obligations to the Company.

b. *Prior Relationships.* Without limiting Section 7.a, I represent and warrant that I have no other agreements, relationships, or commitments to any other person or entity that conflict with the provisions of this Agreement, my obligations to the Company under this Agreement, or my ability to become employed and perform the services for which I am being hired by the Company. I further agree that if I have signed a confidentiality agreement or similar agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its tenns are lawful under applicable law. I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices, and documents), I have returned all property and confidential information belonging to all prior employers (and/or other third parties I have performed services for in accordance with the terms of my applicable agreement). Moreover, I agree to fully indemnify the Company, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor entities, and assigns for all verdicts, judgments, settlements, and other losses incurred by any of them resulting from my breach of my obligations under any agreement with a third party to which I am a party or obligation to which I am bound, as well as any reasonable attorneys' fees and costs.

8. **Return of Company Materials.**

a. *Definition of Electronic Media Equipment and Electronic Media Systems.* I understand that "Electronic Media Equipment" includes, but is not limited to, computers, external storage devices, handheld electronic devices, telephone equipment, and other electronic media devices. I understand that "Electronic Media Systems" includes, but is not limited to, computer servers, messaging and email systems or accounts, and web-based services (including cloud-based information storage accounts), whether provided for my use directly by the Company or by third party providers on behalf of the Company.

b. *Return of Company Property.* I understand that anything that I created or worked on for the Company while working for the Company belongs solely to the Company and that I cannot remove, retain, or use such information without the Company's express written permission. Accordingly, upon separation from employment with the Company or upon the Company's request at any other time, I will

immediately deliver to the Company and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Company Confidential Information, Associated Third Party Confidential Information, all Company equipment including all Company Electronic Media Equipment, all tangible embodiments of the Inventions, all electronically stored information and passwords to access such property, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items, including, without limitation, those records maintained pursuant to Section 2.d.

c. *Return of Company Information on Company Electronic Media Equipment.* In connection with my obligation to return information to the Company, I agree that I will not copy, delete, or alter any information, including personal information voluntarily created or stored, contained upon my Company Electronic Media Equipment before I return the information to the Company.

d. *Return of Company Information on Personal Electronic Media Equipment.* In addition, if I have used any personal Electronic Media Equipment or personal Electronic Media Systems to create, receive, store, review, prepare or transmit any Company information, including but not limited to, Company Confidential Information, I agree to make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information and if I locate such information I agree to notify the Company of that fact and then provide the Company with a computer-useable copy of all such Company information from those equipment and systems; and I agree to cooperate reasonably with the Company to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by the Company, I agree to delete and expunge all Company information.

e. *No Expectation of Privacy in Company Property.* I understand that I have no expectation of privacy in Company property, and I agree that any Company property situated on Company premises or held by third party providers for the benefit of the Company, is subject to inspection by Company personnel at any time with or without further notice. I also understand and agree that as it relates to the Company's desire to protect its confidential and proprietary information, I have no expectation of privacy as to any personal Electronic Media Equipment or personal Electronic Media Systems that I have used for Company purposes. I further agree that the Company, at its sole discretion, may have access to such personal Electronic Media Equipment or personal Electronic Media Systems to retrieve, destroy, or ensure the permanent deletion of Company information from such equipment or systems. I also consent to an exit interview and an audit to confirm my compliance with this Section 8, and I will certify in writing that I have complied with the requirements of this Section 8.

9. **Termination Certification.** Upon separation from employment with the Company, I agree to immediately sign and deliver to the Company the "Termination Certification" attached hereto as Appendix B. I also agree to keep the Company advised of my home and business address for a period of three years after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

10. **Miscellaneous.** Any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of New York without regard to the conflict of laws provisions thereof. To the extent that any lawsuit is permitted under this Agreement, I consent to the exclusive jurisdiction of and venue in the state and federal courts located in New York County, New York. Any legal action or proceeding relating to this Agreement shall be brought exclusively in the state or federal courts located in New York County, New York, and each party consents to the jurisdiction thereof. The

failure of either party to enforce its rights under this Agreement at any time for any period shall not be construed as a waiver of such rights. Unless expressly provided otherwise, each right and remedy in this Agreement is in addition to any other right or remedy, at law or in equity, and the exercise of one right or remedy will not be deemed a waiver of any other right or remedy. If one or more provisions of this Agreement are held to be illegal or unenforceable under applicable law, such illegal or unenforceable portion shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable. I acknowledge and agree that any breach or threatened breach of this Agreement will cause irreparable harm to the Company for which damages would not be an adequate remedy, and, therefore, the Company is entitled to injunctive relief with respect thereto (without the necessity of posting any bond) in addition to any other remedies.

I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS THAT IT IMPOSES UPON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT. I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY WITH THE UNDERSTANDING THAT I EITHER (1) HAVE RETAINED A COPY OF THIS AGREEMENT OR (2) MAY, AT ANY TIME, REQUEST A COPY OF THIS AGREEMENT FROM THE COMPANY.

ACCEPTED AND AGREED:

**CHAINALYSIS, INC.**

DocuSigned by:
By: Michael Gronager
7E81BC3EB4E4437...
8/26/2022
Name: Michael Gronager, PhD
Title: Chief Executive Officer

DocuSigned by:
By: Eli Hickox
E19EBE0D10FC456...
8/26/2022

**~~[PROPOSED]~~ ORDER**

The Court, having considered the Parties' Stipulation, and good cause appearing, hereby orders as follows:

1. The Parties agree to submit Plaintiff's claims to private arbitration.

2. Any arbitration for this matter shall be conducted pursuant to California law in accordance with California *Labor Code* § 925, California *Code of Civil Procedure* § 1280 *et seq*., 9 U.S.C. § 3, and *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000).

3. The Court will strike the following bolded language in Section 5(a) of the Arbitration Agreement attached hereto as Exhibit A:

> Shall be subject to binding arbitration **under the arbitration provisions set forth in the New York Civil Practice Law and Rules, Article 75, Section 7501 through 7514 (the "Rules") and pursuant to New York Law.**

4. The Court will also strike the following bolded language in Section 5(b) of the Arbitration Agreement attached hereto as Exhibit A:

> I agree that the arbitrator shall administer and conduct any arbitration **in accordance with New York law, including the rules, and that the arbitrator shall apply substantiative and procedural New York law to any dispute or claim, without reference to the rules of conflict of law. To the extent that the JAMS Rules conflict with New York law, New York law shall take precedence.**

5. Further, the Court will strike the following language in its entirety in Section 5(b) of the Arbitration Agreement attached hereto as Exhibit A:

> **I understand that the parties to the arbitration shall each pay an equal share of the costs and expenses of such arbitration, except as prohibited by law, and understand that each party shall separately pay for its respective attorneys' fees and costs.**

6. Lastly, that the Court will strike the following language in its entirety in Section 5(b) of the Arbitration Agreement attached hereto as Exhibit A:

> **I agree that arbitration under this agreement shall be conducted in New York County, New York.**

7. This Court shall retain jurisdiction to enforce this Stipulation, pursuant to 9 U.S.C. § 3 and California *Code of Civil Procedure* §1280 *et seq.*, to submit this matter to binding arbitration and to confirm, correct, or vacate the arbitration award rendered therein.

///

8. Consistent with *Armendariz v. Foundational Health Psychcare Servs., Inc.*, 24 Cal.4th 83 (2000), Defendant shall bear the costs of the arbitrator, forum, and filing fees with the exception of Plaintiff/Claimant's initial filing fee;

9. In entering into this Stipulation, no party waives its right, to the extent permitted under California law, to appeal or challenge any arbitration decision, order, or award.

10. Prior to commencing private arbitration, the Parties agree to participate in mediation through the Court's ADR Multi-Option Program and that participating in such mediation does not constitute waiver of Defendant's right to enforce arbitration.

11. The Parties agree that compliance with this Court's requirement to exchange initial disclosures does not constitute waiver of Defendant's right to enforce arbitration.

12. The Parties agree that all formal discovery in the Action will be stayed until discovery pursuant to the binding arbitration commences.

13. The Parties agree that this Stipulation may be executed in one or more counterparts, including via facsimile or email, each of which shall be deemed an original and all of which shall constitute one and the same Stipulation.

14. This case will be administratively closed by the Clerk, subject to reopening pursuant to paragraph 7.

______________________________________________________________________.

**IT IS SO ORDERED.**

DATE: September 11, 2026_

HONORABLE WILLIAM H. ORRICK